UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| SARA L. MITCHAM, | |
| Plaintiff, | |
| vs. | CAUSE NO. 1:14-cv-315-DKL-SEB |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**ENTRY**

The Commissioner of Social Security denied Sara L. Mitcham's claim for disability-insurance benefits under the Social Security Act. Ms. Mitcham brought this suit for judicial review of that denial. Briefing is now complete and the matter is ready for decision. The parties consented to this magistrate judge conducting all proceedings in this Cause, including entry of judgment, [docs. 4 and 12], and the district judge referred the Cause accordingly, [doc. 15].

**Standards**

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports

1

the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner=s factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. ▪ 416.905(a). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). 20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966. The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §  423(d)(2)(B) and 1382c(a)(3)(G). 20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R.  404.1525. If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity

("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy.  42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four.  The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.  The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level.  Instead, a

4

vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

## Background

In February 2011, Ms. Mitcham applied for disability-insurance benefits under Title II of the Social Security Act, alleging that she became disabled on April 28, 2010. Her claim was denied on initial and reconsideration reviews by the state agency. (R. 98-106, 108-114.) A hearing before an ALJ was held on September 14, 2012, at which she, her daughter, and a vocational expert testified. (R. 34-76.) She was represented by current counsel during the hearing. The ALJ denied her claim on September 25, 2012, (R. 20-29), and she asked the Commissioner's Appeals Council to review that denial, (R. 15-16). She submitted additional evidence to the Appeals Council, consisting of medical evidence that was generated after the hearing and the ALJ's decision. (R. 633-36); [docs. 31-1, 31-2.] The Appeals Council denied her request for review, (R. 1-4), which rendered the ALJ's decision the final decision of the Commissioner on Ms. Mitcham's claim and the one that the Court reviews.

The ALJ initially found that Ms. Mitcham last met the insured-status requirements for disability-insurance benefits on March 31, 2012, (R. 22), which meant that she had to establish that she was disabled as of that date. At step one of the sequential evaluation process, the ALJ found that Ms. Mitcham had not engaged in substantial gainful activity from her alleged onset date of April 28, 2010 to her date last insured. At step two, he found that she has the severe impairment of status post lumbar surgery. The ALJ also found that Ms. Mitcham had the non-severe impairment of status post bilateral carpal tunnel release surgery in 1993. At step three, the ALJ found that Ms. Mitcham does not

have an impairment or combination of impairments that meet or medically equal any of the conditions in the Listing of Impairments.

For the purposes of steps four and five, the ALJ determined Ms. Mitcham's RFC. He found that she could perform light work with additional climbing, postural, and environmental restrictions. He found that this RFC prevented the performance of any of Ms. Mitcham's past relevant work. At step five, relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs exist in the national economy that Ms. Mitcham can perform and, therefore, she was not disabled before she last had insured status. The Appeals Council denied Ms. Mitcham's request to review the ALJ's decision.

**Evidence submitted to the Appeals Council**

Ms. Mitcham submitted to the Appeals Council additional evidence consisting of **(1)** a State Farm insurance company form titled "Attending Physician's Statement of Disability," dated November 1, 2012, that was completed by Melissa A. Roche, M.D., whom Ms. Mitcham describes as her "attending physician," (R. 635-66); **(2)** a December 20, 2012 letter from John M. Gorup, M.D., a board-certified orthopedic surgeon, to Dr. Roche, [doc. 31-2, p. 5]; **(3)** a January 24, 2013 opinion letter by Dr. Gorup regarding Ms. Mitcham's medical status [doc. 31-2, pp. 3-4]; and **(4)** an order form, payments receipts, and discharge instructions for a lumbar spine CT myelogram performed on Ms. Mitcham on November 27, 2012, [doc. 31-1, pp. 3-6].

20 C.F.R. § 404.970(b) provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Courts review *de novo* the Appeals Council's application of this regulation for errors of law. If the Appeals Council committed no legal error, then its determination of whether the ALJ's decision is contrary to the weight of all of the evidence, including the new submissions, is discretionary and unreviewable. *Getch v. Astrue*, 539 F.3d 473, 483-84 (7th Cir. 2008); *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

In this case, the Appeals Council determined that Dr. Roche's statement was new, material, and related to the relevant period, before the expiration of Ms. Mitcham's insured status on March 31, 2012. (R. 1-2.) The Council considered whether the ALJ's decision is contrary to the weight of the evidence, including Dr. Roche's statement, and it determined that there was no basis for changing the ALJ's decision. (R. 2.) Therefore, the Council's determination is discretionary and unreviewable, as far as it relates to Dr. Roche's statement.

The Appeals Council determined that Dr. Gorup's December 2012 letter, his January 2013 opinion letter, and the CT myelogram notes did not relate to the period before Ms. Mitcham's insured status expired and, therefore, the Council did not consider

8

those documents. Dr. Gorup first examined Ms. Mitcham on November 16, 2012, [doc. 31-2, p. 3], almost two months after the ALJ's decision and almost eight months after her insured status expired. While his January 24, 2013 opinion letter (written two months after his examination) states that Ms. Mitcham "will be totally and permanently disabled for the remainder of her working career," *id.*, it offers no opinion on her status before her insured status expired. Ms. Mitcham argues that "[i]t is only logical that the opinions of Dr. Roche [who did express a retroactive opinion] and Dr. Gorup would relate back at least to the date of surgery if not well before and well before the Date Last Insured. Nothing indicates a deterioration of her condition between her Date Last Insured and these two opinions." (*Reply Brief of Plaintiff* [doc. 38] at 7.) But Ms. Mitcham's unsupported "logic" does not substitute for expert medical opinion on her condition before March 31, 2012. She had sufficient opportunity to advise Dr. Gorup of the critical importance of the time period for his original opinion and she had sufficient opportunity to obtain a clarifying supplemental opinion when she discovered that Dr. Gorup's opinion letter did not address the relevant time period, but none was submitted. The Appeals Council and the Court are may assume that such an opinion would not have been helpful to Ms. Mitcham. As it is, the Court finds no legal error in the Appeals Council's assessment of Dr. Gorup's opinion, or the later-submitted documents, under the standard of 20 C.F.R. § 404.970(b).

Therefore, neither Dr. Roche's nor Dr. Gorup's opinions may be considered in the Court's review of the ALJ's decision.

9

## Discussion

Ms. Mitcham argues that the ALJ erred in his credibility determination and in his assignment of "great weight" to the state-agency's medical reviewer.

**1. Credibility determination.** Ms. Mitcham makes five arguments against the ALJ's credibility determination.

**a. Recovery from carpal-tunnel surgery.** The ALJ found that Ms. Mitcham's reports of numbness in her hands and wrists and allegations of manipulation limitations did not justify a greater RFC restriction than an environmental limitation on vibrations because the record shows normal clinical findings and a number of years working after her carpal-tunnel surgery. (R. 25.) Ms. Mitcham argues that the fact that she worked after carpal-tunnel surgery "is far different than being able to work after major back surgery." (*Brief of Plaintiff* at 9.) But Ms. Mitcham reads too much into the ALJ's finding. His credibility determination here was limited to her manipulation restrictions; he did not find that she has the RFC for full-time work because she recovered her ability for fine-finger manipulation following her carpal-tunnel surgery.

**b. Functional capacity evaluation.** In support of his credibility determination, the ALJ cited the functional capacity evaluation of Ms. Mitcham that was performed in June 2012, before she was released from the work conditioning program following her lumbar surgery. (R. 25, 26, 497-503.) This evaluation was a five-and-one-half-hours test comprised of ninety-minute job circuits. The ALJ cited the evaluator's report that (1) pain questionnaires indicated strong tendencies toward inappropriate illness behavior by Ms.

10

Mitcham, (2) her subjective reports did not correlate well with movement patterns or pain behaviors, (3) her performance was unreliable with variable effort, (4) her safe maximal capacity should have been greater than demonstrated because she did not exhibit expected competitive test performance behaviors, (5) her pulse rates did not achieve expected levels of elevation, (6) she did not demonstrate expected use of accessory muscle patterns, and (7) while she exhibited an intermittent limp, it was not consistent when she was distracted for other ambulatory activities. (R. 26, 497, 500.)

Ms. Mitcham argues that it was error for the ALJ to rely on these comments because the pain questionnaires themselves weren't included with the evaluator's report, the evaluator's other comments were not explained, and no examples were given, all of which prevents independent evaluation of the evaluator's findings. Ms. Mitcham also contends that a "full reading" of the report indicates that she exerted maximum effort during the evaluation.

It was not error for the ALJ to rely on the evaluator's reports of Ms. Mitcham's exaggerated symptoms and lack of effort. The ALJ was not required to second-guess the evaluator, determine the evaluator's credibility, or examine the raw data himself, and neither is the Court. There is no indication in the record, and none is pointed out by Ms. Mitcham, that the evaluator's observations or opinions were unreliable. Her invitation for the Court to examine the entire report and find that, on balance, the evidence shows that she expended maximal effort is to ask the Court to reweigh the evidence. The Act assigns weighing of evidence and making evaluative judgments to the Commissioner,

11

and it was not error for the ALJ to place more weight on the more experienced and live observations and opinions of the evaluator.

Ms. Mitcham also, again, misreads the ALJ's citation of the evaluator's comments as the basis for his RFC finding that she can perform the requirements of full-time work at the light level. The ALJ's citation was only in partial support of his credibility determination.

**c. Use of a cane.** Ms. Mitcham faults the ALJ for citing her use of a cane as a factor weighing against the veracity of her symptom and functional-limitation allegations. She relies on *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010), but that decision criticized an ALJ for discrediting a claimant who used a cane that was not prescribed, which is not the case here. While the ALJ observed that Ms. Mitcham was not prescribed a cane, he found that her use of a medically *unnecessary* cane — not an unprescribed one — eroded her credibility. He noted that no doctor had indicated that an assistive device was necessary, the functional-evaluation evaluator reported that her intermittent limp was not credible, clinical findings showed that she was neurologically intact, and Dr. Schwartz noted that, on discharge, she ambulated without a cane. It was not error for the ALJ to cite Ms. Mitcham's use of a cane that she did not need as a factor weighing against her credibility.

**d. Balance of the evidence.** Finally, Ms. Mitcham argues that "[l]ooking at the entire record we find considerable evidence of credibility on the part of Mitcham." (*Brief of Plaintiff* at 11.) There follow pages of citations to indications in the record that Ms. Mitcham is credible and arguments from the *absence* of indications in the record that she

is not credible, *e.g.*, doctors' suggestions that she was not making a good-faith effort on tests, was not trying to improve, or was showing inappropriate illness behavior. This is another invitation to the Court to reweigh the evidence, which it may not do. The ALJ considered the evidence in the record and his reasons for finding her symptom-severity and function-limiting statements to be not fully credible are supported by substantial evidence in the record. The ALJ's conclusion might not be the one that Ms. Mitcham, the Court, or another ALJ might make, but such is not the standard that the Court applies on review.

Ms. Mitcham has not shown error in the ALJ's credibility determination.

**2. RFC based on Dr. Fife's opinion.** Ms. Mitcham argues that the ALJ erred by giving more weight to Dr. Fife's opinion than Dr. Bangura's and by adopting Dr. Fife's RFC opinion which was issued before her lumbar surgery and the existence of the later evidence of her functional limitations following surgery.

R. Fife, M.D., is the state-agency physician who made the medical determination on initial review of Ms. Mitcham's application for benefits. (R. 77, 98-106.) His RFC opinion was recorded on a *Physical Residual Functional Capacity Assessment* form, (R. 316-23), which he completed after reviewing the report of Luella Bangura, M.D., to whom he had sent Ms. Mitcham for an outside consultative examination, (R. 312-15). Ms. Mitcham asserts that it is "uncertain why the ALJ gave great weight to Dr. Fife's opinion and very little weight to Dr. Luella Bangura . . . ." (*Brief of Plaintiff* at 16.) But it is not uncertain; the ALJ explained that he found that Dr. Fife's opinion, which was confirmed by another

13

state-agency physician on reconsideration review, (R. 359), was supported by the mild diagnostic test results and clinical findings by Dr. Bangura, (R. 26). The ALJ also wrote that he assigned "little weight" to Dr. Bangura's opinion because it was vague; it indicated only that Ms. Mitcham might have difficulties in certain functions (*e.g.*, handling objects, standing, walking for long periods, and lifting), without positively indicating what she is capable of doing, which is required for an RFC determination; her opinion regarding handling objects was directly contradicted by her clinical findings; and it appeared to the ALJ that her opinions were based on Ms. Mitcham's subjective reports rather than objective findings. (*Id.*)

Ms. Mitcham argues that the ALJ erred by 'adopting' and 'giving controlling weight' to Dr. Fife's RFC opinion because (1) Dr. Fife is a non-examining source; (2) his opinion was issued months before her lumbar surgery occurred, which she contends is the primary cause of her disability; and (3) his opinion was issued before the best evidence of her disability, namely the reports of Drs. Roche and Gorup, were issued.

Ms. Mitcham's arguments do not show error by the ALJ. First, the ALJ's RFC opinion was not based solely on Dr. Fife's opinions. The ALJ explained that his RFC finding was based, in part, on Dr. Fife's (and Dr. Sands') opinions; the results of the post-surgery functional-capacity evaluation; Ms. Mitcham's credibility in general; and the opinion of her treating orthopedic specialist, David Schwartz, M.D., who reported that she had recovered well from the surgery, with limitations consistent with light work. (R. 25-26.) There is no support in the record for a finding that the ALJ simply adopted Dr.

Fife's opinion as his RFC finding.  Second, as decided above, Dr. Roche's and Dr. Gorup's opinions may not be considered in the Court's review of the ALJ's decision.

Ms. Mitcham has not shown error in the ALJ's assignment of weight to Dr. Fife's opinion or in the ALJ's RFC finding.

## Conclusion

Because Ms. Mitcham has not shown that the Commissioner's denial of her claim is unsupported by substantial evidence or is the result of legal error, judgment will issue affirming the Commissioner's decision.

**DONE this date:**  03/25/2015

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.